## PAN AMERICAN AIRWAYS, Inc. v. UNITED STATES.

### No. 46869.

United States Court of Claims.

Dec. 6, 1948.

HOWELL and LITTLETON, JJ., dissenting.

James E. Nickerson of New York City (Henry J. Friendly of New York City, on the brief), for plaintiffs.

S. R. Gamer, of Washington, D. C., and H. G. Morison, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge and WHITAKER and MADDEN, Judges.

WHITAKER, Judge.

Plaintiff had a contract with the Air Transport Command, acting for the United States, for the transportation of goods and personnel during the last war. It was a cost-plus-fixed-fee contract, under which the defendant agreed to reimburse plaintiff for its costs in the carrying out of the contract plus a fixed fee. The costs to be reimbursed were set forth with some particularity. They included wages paid and "the cost of such bonds and insurance as the contracting officer may approve or require * * *." Plaintiff sues for the amount by which it increased the salaries of certain of its employees in its Africa-Orient Division in order that they might pay the cost of life and accident insurance policies obtained by plaintiff for their benefit from Lloyd's of London, England.

Defendant says that plaintiff's suit is actually for the cost of these premiums and that the contract provided that such costs were not reimbursable. We think defendant's contention is correct.

About a year prior to the contract upon which plaintiff sues, the Air Transport Command and plaintiff and some of its subsidiaries entered into certain contracts, on August 12, 1941, for certain transport services between various African points. Like the contracts in issue in this case, the contracts of August 12, 1941 were also cost-plus-fixed-fee contracts, providing for the payment, among other things, of wages and insurance premiums. Being unable to include its employees engaged in the performance of these contracts among those insured by its group life insurance policy with the Travelers Insurance Company, since these employees were subject to war risks, plaintiff purchased a policy from Lloyd's of London, England, insuring them

against death up to a maximum of $10,000. The premiums for this insurance were quite expensive, but plaintiff was reimbursed therefor by defendant.

However, on August 29, 1942, defendant advised plaintiff that it would no longer reimburse it for the Lloyd's insurance, but it would reimburse it for payments it made to the beneficiaries of any employees who might be killed in the performance of the contract in the same amount as was payable under the Lloyd's policy. At the same time it discussed with plaintiff the terms of a further proposed cost-plus-fixed-fee contract for certain additional air transport services of goods and personnel to Africa and the Orient. So far as was concerned the insurance to be paid under the proposed contracts, defendant stated that it would not agree to reimburse premium costs for life insurance in excess of $10,000, inasmuch as this was the limit of the insurance to which personnel in the armed services was entitled, but it would agree to reimburse plaintiff for the premiums paid on life insurance to this extent, or, in the alternative, it would agree to reimburse plaintiff for any payments it might make to the beneficiaries of any of its employees who were killed in the performance of the contract up to $10,000. This latter alternative was called the "death benefit plan." These proposed insurance arrangements were satisfactory to plaintiff.

Following this conference defendant wrote plaintiff on September 23, 1942, that it desired to enter into a formal contract with plaintiff for the transport of goods and personnel from Miami, Florida, to Natal, Brazil, or between such other points as the Commanding General would from time to time require; but it was stated that the exigencies of the war required that plaintiff enter upon the performance of these services prior to the execution of a formal contract. The letter stated that plaintiff would be reimbursed for its costs and expenses, including wages and salaries, and would be paid such fee as the contracting officer, with the approval of the Secretary of War, might think fair and just. Relative to insurance, the letter provided that the plaintiff would be "reimbursed for the costs of such bonds and insurance as the contracting officer may approve or require." The following day the contracting officer wrote plaintiff a further-letter in which he said:

Accident insurance on employees will not be authorized in connection with the subject contract. An appropriate provision will be incorporated in subject contract whereby payments not to exceed $10,000 made by the Contractor to designated beneficiaries of Contractor's employees who shall die while engaged in work in connection with the performance of the subject contract will be allowable items of cost thereunder.

On October 5, 1942, plaintiff accepted the offer made by defendant in its letter of September 23, 1942.

Later, on April 29, 1943, plaintiff and defendant entered into a formal contract superseding the contract as set out in defendant's letter of September 23, 1942, referred to by the parties as the "letter contract."

Prior to the execution of the formal contract defendant had had a number of conferences with plaintiff relative to the "death benefit plan" set forth in defendant's letter of September 24, 1942. Defendant, prior to these conferences, had worked out a plan with insurance companies whereby these companies agreed to continue to write group life insurance covering the employees of airline companies engaged in the performance of contracts involving war risks, upon the understanding that the contractor would pay to the beneficiaries of its employees killed as the result of direct war action the amounts stated in the policies and that the United States would reimburse the contractor for the amount so paid. Defendant desired to substitute this plan, called the "War Department Insurance Rating Plan," for the "death benefit plan."

Plaintiff objected to this because it said this would afford to its employees in its Africa-Orient Division only a maximum of $10,000 of protection, whereas its employees in its Atlantic Division were re-

ceiving protection up to $20,000, and this would make it difficult for it to induce its employees in the Atlantic Division to perform services from time to time in the Africa-Orient Division.

It should be said, parenthetically, that plaintiff's employees in the Atlantic Division were receiving as much as $20,000 of protection because they were entitled to be included in plaintiff's group life insurance policy with the Travelers Insurance Company and because plaintiff, at the instance of these employees, had in addition purchased for their benefit a life and accident policy from Lloyd's of London, England, insuring them for an additional amount up to $10,000.

We are unable to see the force of plaintiff's objection referred to above, because plaintiff's employees in the Africa-Orient Division, except those transferred there from the Atlantic Division, theretofore received no greater protection than the $10,000 under the "death benefit plan," since they were not covered by plaintiff's group life insurance plan with the Travelers Insurance Company, and since defendant had expressly refused to pay the cost of Lloyd's insurance on plaintiff's employees.

At any rate, whether or not there is any force in plaintiff's objection to the substitution of the "War Department Insurance Rating Plan" for the "death benefit plan," nevertheless, the parties on April 29, 1943, entered into a formal contract, superseding the "letter contract," which, in article 3(d) (4), provided that the contractor should be reimbursed for "such bonds and insurance policies *as have been approved or required by the Contracting Officer.*" This contract also provided in paragraph (d) (5) of article 3 that an allowable item of cost should be the contractor's "cost, including incidental expenses and premiums (if any) of providing such death, injury, workmen's compensation, internment, hospitalization and other benefits to the Contractor's employees engaged in performing services under this Contract *as the Contracting Officer may approve or require.*" [Italics ours.] Also in article 22, paragraph (a), the contract provided:

The Contractor shall procure and thereafter shall maintain such bonds and insurance in such forms and in such amount and for such periods of time *as the Contracting Officer may require in writing* and shall be reimbursed for the cost thereof as provided in Article 3 hereof. [Italics ours.]

The contracting officer, therefore, was given full authority to determine the amount of insurance on plaintiff's employees, the premiums on which should be reimbursable by the defendant. The contracting officer refused to approve for reimbursement the premiums on any insurance except the premiums payable on the policy issued under the War Department Insurance Rating Plan, providing death benefits up to $10,000. The premiums paid by plaintiff on this policy were reimbursed, and plaintiff had been fully informed on August 29, 1942, prior to its entry into any contract with the defendant for the performance of the services in question, that the defendant would not reimburse it for premium costs for life insurance in excess of this amount, inasmuch as the personnel in the armed services was insured only to the extent of $10,000.

Plaintiff, however, felt compelled to provide further insurance for its employees in its Africa-Orient Division. In order to secure this insurance and in an attempt to make the cost thereof reimbursable under its contract with defendant, plaintiff conceived the idea of increasing the salaries of those employees in its Africa-Orient Division who desired to purchase this insurance by an amount sufficient to take care of the premiums. It secured the consent of the National Railway Labor Panel to do so, and it did increase the salaries of those employees who wished this additional protection by an amount sufficient only to take care of the premiums, but it did not increase the salaries of any of its employees who did not want this insurance.

It appears manifest that plaintiff is seeking to do by indirection what it was not entitled to do directly under the terms of the contract. Although technically its suit is for additional wages paid its employees, a reimbursable item, it is in fact a suit for the premiums on insurance which defendant

234

expressly refused to pay. Plaintiff cannot do indirectly what the contract expressly prohibited it from doing directly.

Plaintiff's petition will be dismissed.

MADDEN, Judge, and JONES, Chief Judge, concur.

HOWELL and LITTLETON, Judges, dissent.